FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

16 DEC -7  PM 5:33

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

A16 CR 347 SS

| | |
|---|---|
| UNITED STATES OF AMERICA | § §  **INDICTMENT** |
| v. | § § § |
|  | § § § **COUNT ONE:** 18 U.S.C. § 1956(h), Conspiracy to Commit Money Laundering; **COUNTS TWO-THREE:** 18 U.S.C. § 1349, Fraud Conspiracy |
| OCHUKO SYLVESTER ERUOTOR (3), LEWIS AKPOMOFUNE (4), NATHANIEL ITIMI, aka Albert Mensah (5), OMOH MICHAEL OKIKI (6), AYIBATONYE BIENZIGHA, aka Tracy Hawkins (7), EGHOSA BRIGHT OBARETIN, aka David Smith, aka Thabo Nelson (8), ROLAND IMOE, aka Frederick Johnson (9) | § § § § § § § § § § § § § § |

THE GRAND JURY CHARGES:

At All Times Material To This Indictment:

## THE SCHEMES

1.     The coconspirators listed herein laundered money obtained by fraudulent means and

pretenses from victims in the United States and elsewhere. The conspiracy utilized a network of

individuals in the United States to receive victim money in U.S. bank accounts, often opened

under fraudulent names, and transferred those funds to co-conspirators inside and outside of the

United States. Scam proceeds flowed through Austin, Texas-based bank accounts and through

multiple accounts outside of Austin.

2.     A variety of fraudulent schemes designed to procure funds from innocent victims via

false and fraudulent pretenses were utilized.

3.      The money launderers, who knew the money came from fraud, but who did not always know which specific type of fraudulent scheme, received and transferred funds using bank accounts in their own names as well as bank accounts opened via fraudulent foreign passports in false names.  When the bank accounts were opened, debit cards were issued by the banks and mailed to the money launderers, in furtherance of the crimes.

4.      ███████████████ and OCHUKO SYLVESTER ERUOTOR (OCHUKO), acting sometimes at the direction of ████████████████████ and sometimes on their own behalf, paid co-conspirators to launder scam money through fraudulent bank accounts.

5.      Some of the co-conspirators were solely money launderers. Some were both money launderers and scammers. For example, █████ was also operating a distinct fraud conspiracy, described below in Count 3, and he would use the money laundering conspiracy to launder those proceeds money.

6.      Many members of the money laundering conspiracy performed different roles throughout the scheme: in one transaction a coconspirator would receive funds into a U.S. bank account in a false name; in a different transaction the same coconspirator would receive calls from victims as he pretended to be operating a sweepstakes in furtherance of a sweepstakes scheme; in another instance that same coconspirator might advise a coconspirator on how to best word an email to a potential victim as part of an inheritance scam; in yet another instance that same coconspirator would offer up the use of a U.S. bank account controlled by someone he hired to launder fraudulently obtained funds.

2

## MANNER AND MEANS

7.      Multiple U.S. citizens were victimized by this conspiracy. A variety of ruses were used. Below are examples of ruses perpetrated by the conspiracy and the subsequent monetary laundering scheme manner and means.

*Get Out Of Jail Ruse*

8.      A victim would be contacted by a person fraudulently claiming to be a relative or a friend's relative; the person would tell the victim that they had been arrested and needed money to get out of jail. A different person would then contact the victim claiming to be in law enforcement and would instruct the victim to wire money to a bank account opened by a coconspirator. If the victim sent the money, then often times a different person would contact the same victim and pretend to be a lawyer or a different law enforcement member and ask for additional funds to secure the release of the relative. These requests would often continue until the victim finally refused to send money. Some victims lost tens of thousands of dollars.

*Inheritance Ruse*

9.      A victim would be contacted by a person fraudulently claiming to be a bank or government official, often times from an email address whose domain was similar to the entity the person claimed to work for. The victim would be told that they were going to inherit a vast sum of money, for example $14 million, but they had to send their identification documents and pay a fee in order for the funds to be released. The victim would then wire thousands of dollars to a bank account supplied by the person. If the victim sent that initial sum, the person would often send another request for an additional fee.

*Customs Ruse*

10.      A victim is contacted by someone fraudulently telling them that either a precious metal or

3

funds have been seized in transit from abroad. A fee must be paid to secure their release from customs. The victim then sends a fee to secure the release.

*Money Laundering*

11.     Regardless of how the funds were fraudulently obtained, the proceeds would be sent to a bank account controlled by a coconspirator in the United States. Often times that account had been opened up with a fraudulent identification document in a fake name. Sometimes the account was in a "doing business as" bank account under the name of a real person. Once the money was in the bank account, it would be quickly withdrawn by the coconspirator. The funds would then be wired to other U.S. bank accounts or hand delivered to coconspirators. From there, the money would be wired to accounts in Canada or Nigeria that were controlled by coconspirators. The U.S. bank account holders would be paid a fee based on the amount of fraudulently obtained proceeds that flowed through accounts they controlled. Scam proceeds were sometimes used to purchase goods by coconspirators.

<u>Roles of the Defendants</u>



12.     ███████████████████████: Hired money launderers to receive funds from fraud schemes. Utilized ██████ and OCHUKO as intermediaries to hire money launderers.

13.     ████████████: Hired by ██████ to launder funds; hired money launderers to receive funds from fraud schemes, including PREVIOUSLY INDICTED COCONSPIRATOR 1 who opened up multiple bank accounts in Austin, Texas with five fraudulent passports in five different names. Also established and controlled internet domains and email accounts and used them, in connection with others, to perpetrate schemes as described in Count 3 below. ██████ then used the money laundering conspiracy to launder the funds from the schemes he controlled.

14.     OCHUKO SYLVESTER ERUOTOR: Hired by ██████ to launder funds; hired money

4

launderers to receive funds from fraud schemes, including PREVIOUSLY INDICTED COCONSPIRATOR 1 who opened up multiple bank accounts in Austin, Texas with five fraudulent passports in five different names.

15.    LEWIS AKPOMOFUNE: worked with ▮▮▮, and others, to receive money from fraud schemes. Sent scam proceeds to coconspirators in Canada.

16.    NATHANIEL ITIMI: hired by ▮▮▮▮▮ and OCHUKO to receive money from fraud schemes and then hired others to receive scam proceeds. Utilized a bank account opened with a fraudulent passport in the name of Albert Mensah to receive fraud proceeds. Sent scam proceeds to coconspirators in Canada and hired others to send scam proceeds to Canada.

17.    OMOH MICHAEL OKIKI: worked with ▮▮▮ and others, to receive money from fraud schemes. Utilized bank accounts that were opened via fraudulent passports to receive money from fraud schemes. Sent scam proceeds to coconspirators in Canada.

18.    AYIBATONYE BIENZIGHA, aka Tracy Hawkins: utilized bank accounts in the name of Tracy Hawkins that were opened via a fraudulent passport to receive money from fraud schemes. Also sent money to a coconspirator in Nigeria.

19.    EGHOSA BRIGHT OBARETIN, aka David Smith, aka Thabo Nelson: utilized bank accounts in the names of David Smith and Thabo Nelson that were opened via fraudulent passports; received money from fraud schemes in those accounts.

20.    ROLAND IMOE, aka Frederick Johnson: utilized a bank account in the name of Frederick Johnson that was opened via a fraudulent passport; received money from fraud schemes in that account.

## COUNT ONE
### [18 U.S.C. § 1956]
### Conspiracy to Commit Money Laundering

21.    Count One incorporates by reference, as if fully set forth herein, paragraphs one through twenty of this Indictment.

22.    Beginning sometime before 2012, the exact date being unknown, and continuing until on or about December 7, 2016, the exact dates being unknown to the Grand Jury, in the Western District of Texas and elsewhere, the Defendants,

OCHUKO SYLVESTER ERUOTOR (3),

LEWIS AKPOMOFUNE (4),

NATHANIEL ITIMI (5),

OMOH MICHAEL OKIKI (6),

AYIBATONYE BIENZIGHA, aka Tracy Hawkins (7),

EGHOSA BRIGHT OBARETIN, aka David Smith, aka Thabo Nelson (8),

ROLAND IMOE, aka Frederick Johnson (9),

did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely:

   a.  To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud, and Mail Fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature,

6

location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.  To knowingly transport, transmit, transfer and attempt to transport, transmit, transfer funds and monetary instruments, from a place in the United States to a place outside the United States, knowing that the funds and monetary instruments involved in the transportation, transmittal, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmittal, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, Wire Fraud, and Mail Fraud, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWO
### Conspiracy to Commit Fraud
### [18 U.S.C. § 1349]

23.    Count Two incorporates by reference, as if fully set forth herein, paragraphs one through ten, and twelve through twenty of this Indictment.

24.    Beginning sometime before September 1, 2013 and continuing until on or about December 7, 2016, the exact dates being unknown to the Grand Jury, in the Western District of Texas and elsewhere, the Defendants,

███████████████████████████████████████

OCHUKO SYLVESTER ERUOTOR (3),

did knowingly and willfully conspire and agree with others known and unknown to the Grand

Jury to commit certain offenses against the United States, namely:

a. *Wire Fraud, in violation of 18 U.S.C. § 1343*, that is, knowingly and with intent to

defraud, having devised and having intended to devise a scheme and artifice to

defraud, and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises, for the purpose of executing the scheme and

artifice, transmitted and caused to be transmitted by means of wire, radio and

television communication in interstate commerce certain writings, signs, signals,

pictures and sounds; and

b. *Mail Fraud, in violation of 18 U.S.C. § 1341*, that is, with the intent to defraud, having

devised and having intended to devise a scheme and artifice to defraud, and to obtain

money and property by materially false and fraudulent pretenses, representations, and

promises, for the purpose of executing the scheme and artifice, or attempting to do so,

sent by the U.S. Postal Service and a private carrier and caused to be sent by the U.S.

Postal Service and a private carrier any matter and thing.

The proceeds for both the mail and wire frauds were then laundered using the manner and means

set forth in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

### COUNT THREE
### Conspiracy to Commit Fraud
### [18 U.S.C. § 1349]

25.    Count Three incorporates by reference, as if fully set forth herein, paragraphs one

through seven, nine, and thirteen of this Indictment.

26.     Beginning sometime before September 1, 2013 and continuing until on or about December 7, 2016, the exact dates being unknown to the Grand Jury, in the Western District of Texas and elsewhere, the Defendant,



did knowingly and willfully conspire and agree with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely:

c.  *Wire Fraud, in violation of 18 U.S.C. § 1343*, that is, knowingly and with intent to defraud, having devised and having intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire, radio and television communication in interstate commerce certain writings, signs, signals, pictures and sounds. That is, established internet domain names, including offshorecentre.org and rbcfg.net, and perpetrated fraudulent schemes. The Defendant would pose as an official or financial officer who needed a relatively small fee in order for vast sums of money to be released to the victim. Communications were sent to victims via email directly from ████ or by coconspirators. The proceeds were then laundered using the manner and means set forth in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE

### I. Forfeiture Statutes Relating to Money Laundering Violation
### [18 U.S.C. § 982(a)(1)]

9

As a result of the criminal violation set forth in Count One, the United States gives notice that it intends to forfeit, but is not limited to, the below-listed property from Defendants ███████████████████████ **Ochuko Sylvester Eruotor, Lewis Akpomofune, Nathaniel Itimi, Omoh Michael Okiki, Ayibatonye Bienzigha, Eghosa Bright Obaretin,** and **Roland Imoe.** Defendants shall forfeit all right, title, and interest in said property to the United States pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 982(a)(1), which states, in pertinent part, the following:

> **18 U.S.C. § 982. Criminal Forfeiture**
> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## II. Forfeiture Statutes Relating to Fraud Violation
[18 U.S.C. § 981(a)(1)(C) as made applicable by 28 U.S.C. § 2461(c)]

As a result of the criminal violations set forth in Counts Two and Three, the United States gives notice that it intends to forfeit, but is not limited to, the below-listed property from Defendants ████████████████████████ and **Ochuko Sylvester Eruotor.** Defendants shall forfeit all right, title, and interest in said property to the United States pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 981(a)(1)(C), which is made applicable to criminal forfeiture by 28 U.S.C. § 2461(c). Section 981 provides:

> **18 U.S.C. § 981. Civil Forfeiture**
> (a)(1)  The following property is subject to forfeiture to the United States:
>                 * * *
>    **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

10

This Notice of Demand for Forfeiture includes, but is not limited, to the property described in the paragraphs below.

### III.  Money Judgment

A sum of money equal to $ 2,000,000 which represents the amount of proceeds obtained, directly or indirectly, and/or property involved in such offense or traceable to such property as a result of the violations set forth in Counts One, Two, and/or Three of the Indictment for which Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**Ochuko Sylvester Eruotor, Lewis Akpomofune, Nathaniel Itimi, Omoh Michael Okiki, Ayibatonye Bienzigha, Eghosa Bright Obaretin,** and **Roland Imoe** are jointly and severally liable.

### IV. Substitute Assets

If any of the properties described above, as a result of any act or omission of Defendants

▮▮▮▮▮▮▮▮▮▮▮▮▮▮**Ochuko Sylvester Eruotor, Lewis Akpomofune,**

**Nathaniel Itimi, Omoh Michael Okiki, Ayibatonye Bienzigha, Eghosa Bright Obaretin,** and

**Roland Imoe:**

  a. cannot be located upon the exercise of due diligence;
  b. has been transferred or sold to, or deposited with, a third person;
  c. has been placed beyond the jurisdiction of the Court;
  d. has been substantially diminished in value; or
  e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek the forfeiture of any other property owned

by Defendants ▮▮▮▮▮▮▮▮▮▮▮▮**Ochuko Sylvester Eruotor, Lewis**

**Akpomofune, Nathaniel Itimi, Omoh Michael Okiki, Ayibatonye Bienzigha, Eghosa Bright**

**Obaretin,** and **Roland Imoe** up to the value of said Money Judgment as substitute assets, pursuant

to FED. R. CRIM. P. 32.2 and 21 U.S.C. § 853(p).

11

A TRUE BILL:

SIGNATURE REDACTED PURSUANT
TO E-GOVERNMENT ACT OF 2002

_____

FOREPERSON

RICHARD L. DURBIN, JR.
United States Attorney

By: _____
MICHAEL C. GALDO
Assistant United States Attorney